**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| GRETA SEMSROTH, KIM WAREHIME, SARA VOYLES, AND HEATHER PLUSH, | ) ) ) |
| Plaintiffs, | ) **CIVIL ACTION** |
| v. | ) No.  04-1245 MLB |
| CITY OF WICHITA and CHIEF NORMAN WILLIAMS, | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM AND ORDER**

## I.  INTRODUCTION

Plaintiffs, female officers of the City of Wichita's ("City") police department, filed suit against the city and Chief Norman Williams alleging violations of federal law.  Plaintiffs' claims allege sexual harassment, hostile work environment, gender discrimination and violations of equal protection and due process.

This case comes before the court on plaintiffs' motion for class certification.[1] (Docs. 70, 73).  The motion has been fully briefed and is ripe for decision.  (Docs. 71, 82, 85).  For the following reasons, the motion for class certification is DENIED.

## II.  FACTS[2]

Plaintiffs allege unfair treatment in the department solely on

---

[1] Plaintiffs' motion seeks to certify a class only as to their Title VII and 42 U.S.C. § 1981 claims.  (Docs. 71 at 53-54, 85 at 2).

[2] The court will not restate all facts as presented in the complaint and motion to certify, but rather list those facts that are pertinent to resolving the issues currently before the court.

the basis of their gender.  Specifically, plaintiffs claim that, as a result of their gender, defendants have denied them job assignments, promotional opportunities, supervisory positions, training, equal pay, bonuses, and other benefits of employment.  Plaintiffs also allege that defendants have consistently ignored complaints about the sexually hostile work environment, inadequately investigated female officers' complaints, and failed to take action to eliminate unlawful working conditions.

Plaintiffs seek to have the court certify their complaint as a class action.  The class, as defined by plaintiffs, would consist of:

> All female commissioned officers currently, formerly, or otherwise employed by the City of Wichita who have been, or may be, discriminated against because of their gender as a result of a systematic pattern and practice of intentional gender discrimination or has been, or may be, disparately impacted by facially neutral policies of the defendant since April 11, 1995.

(Doc. 85 at 2).  Defendants respond that plaintiffs have failed to exhaust their administrative remedies as to the class, various claims are untimely and that the class is not certifiable under Fed. R. Civ. P. 23.

## III. ANALYSIS

Exhaustion of administrative remedies is a "jurisdictional prerequisite" to suit under Title VII.  Jones v. Runyon, 91 F.3d 1398, 1399 (10th Cir. 1996).  The purpose of filing an Equal Employment Opportunity Commission (EEOC) charge is twofold: first, it is intended to protect employers by giving them notice of the discrimination claims being brought against them; second, it provides the EEOC with an opportunity to conciliate the claims.  Foster v. Ruhrpumpen, Inc., 365 F.3d 1191, 1194-95 (10th Cir. 2004).  Accordingly, plaintiffs'

-2-

claims are "generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." MacKenzie v. City and County of Denver, 414 F.3d 1266, 1274 (10th Cir. 2005).

At the outset, the court notes that plaintiffs' First Amended Class Action Complaint alleges contact with the EEOC solely by plaintiff Semsroth:

> Plaintiff Semsroth reported the unequal treatment that she and other females were facing on about October 27, 2003 to the Equal Employment Office (EEO) of Defendant City. Specifically, Plaintiff Semsroth met with Susan Lieker, who is an employee of Defendant City and working in her official capacity at all relevant times herein. A second meeting took place with Ms. Lieker on November 17, 2003.

(Doc. 53 ¶ 60). Plaintiffs further allege that plaintiffs Semsroth, Warehime and Voyles have received "right to sue" letters. (Id. at ¶ 86). Letters to Semsroth and Voyles are contained in the record (Docs. 85-2 and 85-4). There is no evidence that Warehime received a letter but for purposes of this order, the court will assume that she did. There is no allegation or evidence that plaintiff Plush ever filed a complaint with the EEOC, thus raising a jurisdictional question regarding exhaustion of Plush's Title VII claim. Because there is neither an allegation nor evidence that Plush filed a complaint with the EEOC, the court will assume that Plush, and perhaps Warehime, can maintain Title VII claims only if a class action is certified.

Semsroth's EEOC charge alleges as follows:

> A. On at least three incidents (October and December 2001 and June 2002) I responded to a call that turned into a dangerous call. On each incident the male officers involved in the call were recognized and rewarded whereas I, the only female involved in the calls, received no

-3-

recognition despite doing essentially the same duty.

B. When I made a complaint about this to my superiors nothing was done.  However a picture of awards similar to the ones the other officers received was put in my mail box with a note that said 'feel free to cut these out and pin them on your chest as you feel you deserve them, it may be as close as you ever get.'  The officer involved was not reprimanded.

C. October 3, 2003 my supervising officer informed me that a number of the male offices were calling me a "bitch" and saying I was "milking calls" but none of the officers were reprimanded for the negative statements against me.

D. October 15, 2003 I was to receive back up on a call that never came.  I felt the incident, among others, were [sic] gender related and I informed my supervising officer. I was informed that he could talk to some of the officers but they'd take it the wrong way and nothing would get solved.

E. October 20, 2003 I had a meeting with Lt. Hanley and there was a mutual agreement that I should talk to an EEO representative about my complaints.

F. On that same date I informed him that we had a women's luncheon and other females were having problems as well.  The following day 2-3 Lt's held closed door meetings with all the females on first shift interrogating them as to the nature of these luncheons.

G. After attending a series of these EEO meetings I was moved from 35 beat, a centrally located beat, to the 39 beat, a beat generally reserved for rookie officers and disciplinary moves.

H. Since my attorney's [sic] made contact with the police department regarding the situation the department has been making notes on my files that they would not normally make.

I. Before I contacted any attorney I asked to have an EEOC poster placed in the office a number of times so I would know my rights and what recourse I should take.  On each occasion I was ignored and on one occasion my supervising officer informed me that he was not a company man and that I should sue them.

J. These incidents are just an overview of the systematic and ongoing discrimination I endure.  It is by no means a comprehensive list; it is merely a sample.

-4-

(Doc. 85, exh. 2).

Voyles' EEOC charge reads as follows:

A. During the course of my employment I have been exposed to a number of incidents that I regard as sexual harassment. For example, during one stop the male suspect was standing naked and a male officer asked me if I was 'enjoying myself.'

B. During my pregnancy I was transferred for light duty and one of the male officers, Lt. Bohannon, who was under the impression I was assigned to him made a number of comments to me regarding my pregnancy such as I was 'too fat for that chair,' that 'pregnant women are eating all the time,' that I should be 'taking the stairs not the elevator,' and perpetually commenting on how much I ate.

C. When I made complaints about this I was orally reprimanded in a room that would have been in hearing distance from the media while media members were present.

D. I was reprimanded for making comments on a questionnaire that asked for comments to be made.

E. In Oct. 2001 despite no department policy on a ticket quota, I was required to do desk work for not writing enough tickets. During the same time period there were male officers (Ramsey, Woodard and others) that had written less tickets and were not reprimanded.

F. During 2002 I had attended one community meeting as per department policy. Yet, on my 2002 evaluation I was reprimanded because the department claimed the minimum number of meetings to attend was two. However, there were a number of male officers that attended one meeting or no meetings at all and were not reprimanded.

(Doc. 85, exh. 4).

Warehime's charge alleges the following:

A. In January 1999 I interviewed for a community policing position and was interviewed by three male officers. I was pregnant at the time and during the interview I was asked questions about how many children I had, whether I was married and whether I had adequate day care. The male that applied for the job got the job instead and no reason was given to me.

B. In February 2001 I had a conversation with a male officer, Officer Kilts, and he told me he had raped another woman. When I told my supervisors about this they told me

'he was just trying to turn you on.'    He was never reprimanded.

C.    On or about January 5, 2004 I made a comment about another officer having a disease.    I was given conduct unbecoming an officer for this action.    Other male officers have made similar comments (about Greta Semsroth) or worse comments (see above paragraph) and received no discipline.

D.    January 2004 I was interrogated as to why there was a women's luncheon by three male Lieutenants.

E.    There is a temporary job on the sixth floor that is offered on a six month rotation.    I was in line to get the job during the next rotation. The job is not merit based but solely based on the number of your ID badge. Should patrol East have gotten the position then I should have been in line to get the job.    After my attorneys sent a letter outlining the discrimination it was decided patrol East would not have an officer working on the sixth floor during the next rotation.    I feel this is in retaliation for the letter.

(Doc. 74, exh. 21).

It is readily apparent that the only claim which arguably could give the EEOC and the employer notice of a collective or class-wide charge is paragraph F of Semsroth's EEOC complaint:

F. On that same date [October 20, 2003] I informed him [Lt. Hanley] that we had a women's luncheon and other females were having problems as well.    The following day 2-3 Lt's held closed door meetings with all the females on first shift interrogating them as to the nature of these luncheons.

The narrow question is whether this paragraph constitutes sufficient notice for class-action purposes.    In their 80-plus pages of briefing, plaintiffs devote almost no attention to this threshold issue.[3]

_____

[3] Strangely however, plaintiffs devote numerous pages to expert opinions and excerpts from depositions after correctly stating that the district court cannot proceed to a merits review.    (Doc. 71 at 10).    Even though the court has been inundated with hundreds of pages of briefings and exhibits, the court has, at all times, presumed the complaint and the allegations contained within are true.

-6-

As previously noted, a plaintiff must exhaust her administrative remedies before bringing suit under Title VII. <u>Aramburu v. Boeing Co.</u>, 112 F.3d 1398, 1409 (10th Cir. 1997). Under certain circumstances, however, an employee who did not file an EEOC charge may "piggyback" on the EEOC complaint filed by another similarly-situated employee. This is the so-called "single-filing rule." <u>Foster v. Ruhrpumpen, Inc.</u>, 365 F.3d 1191, 1194-95 (10th Cir. 2004). In the context of a purported class action, the EEOC charge must give the employer notice of the collective or class-wide nature of the charge. <u>Gitlitz v. Compagnie Nationale Air France</u>, 129 F.3d 554, 558 (11th Cir. 1997) and <u>Thiessen v. Gen. Elec. Capital Corp.</u>, 267 F.3d 1095 (10th Cir. 2001)(<u>Thiessen II</u>).[4]

In <u>Foster</u>, the court noted that "[i]t is not entirely clear from <u>Thiessen II</u> which test [for the single filing rule] has been adopted by this circuit." <u>Foster</u>, 365 F.3d at 1198. <u>Thiessen II</u> "references both the broadest test, allowing a non-filing plaintiff to piggyback on the EEOC complaint filed by another person who is similarly situated and the somewhat narrower test, [additionally] requiring that the EEOC charge filed [by the employee] gave the employer notice of the collective or class-wide nature of the charge." <u>Id.</u> (citations ommitted).

<u>Thiessen II</u> described the single filing rule as follows:

> Federal courts universally hold that an individual who has not filed an administrative charge can opt-in to a suit filed by any similarly situated plaintiff under certain conditions. <u>Mooney v. Aramco Services Co.</u>, 54 F.3d 1207, 1223 (5th Cir. 1995) (quoting <u>Anson v. Univ. of Tex. Health</u>

---

[4] The appellate court opinion will be referred to as <u>Thiessen II</u>. <u>Thiessen I</u>, <u>infra</u> at pages 9-10, is the opinion by the district court.

Sci. Ctr., 962 F.2d 539, 540 (5th Cir. 1992)); see
Mistretta v. Sandia Corp., 639 F.2d 588, 594-95 (10th Cir.
1980) (adopting single-filing rule in ADEA action). This
so-called "single-filing rule" generally allows a
plaintiff, who did not file an EEOC charge, to piggyback on
the EEOC complaint filed by another person who is similarly
situated. Mooney, 54 F.3d at 1223; see Gitlitz v.
Compagnie Nationale Air France, 129 F.3d 554, 558 (11th
Cir. 1997) (A plaintiff who has not filed an individual
EEOC charge may invoke the single-filing rule where such
plaintiff is similarly situated to the person who actually
filed an EEOC charge, and where the EEOC charge actually
filed gave the employer notice of the collective or
class-wide nature of the charge.) The policy behind the
single filing rule is that it would be wasteful, if not
vain, for numerous employees, all with the same grievance,
to have to process many identical complaints with the EEOC.
Mooney, 54 F.3d at 1223 (quoting Oatis v. Crown Zellerbach
Corp., 398 F.2d 496, 499 (5th Cir.1968)). As long as the
EEOC and the company are aware of the nature and scope of
the allegations, the purposes behind the filing requirement
are satisfied and no injustice or contravention of
congressional intent occurs by allowing piggybacking. Id.
at 1223.

Thiessen II, 267 F.3d at 1110.

Thiessen II reversed the district court's decision to decertify
the class and limit the class to certain members who it had determined
fell outside of the time period. It did not apply the single filing
rule. Seemingly undisturbed is the analysis of Chief Judge Lungstrum
in holding that the opt-in plaintiffs' claims were viable under the
single filing rule. Chief Judge Lungstrum stated:

In order for individuals in a collective action to invoke
the single-filing rule, the filed charge must contain an
allegation of class-wide discrimination sufficient to give
the defendants notice of potential class claims. See
Mistretta, 639 F.2d at 593-94 (holding notice requirements
of § 626(d) were satisfied on behalf of similarly situated
opt-in plaintiffs where timely notice had been given for
the group). In Mistretta, only two plaintiffs in the §
216(b) action filed charges of discrimination with the EEOC
and the appropriate state agency. Id. at 593. In analyzing
whether the notice requirements of § 626(d) had been
satisfied as to the remaining opt-in plaintiffs, the Court
reasoned:

-8-

The recipients were notified that the suit was
intended to be a class action for all employees
or former employees of Sandia who were between
the ages of 40 and 65. The formal charges were
alleged to have been filed for the individual
complainants and all others similarly situated.
The allegation was that Sandia's "arbitrary
action constitutes age discrimination against
workers over 40," a notice which notified the New
Mexico Human Rights Commission so that it had
opportunity to investigate and to act within the
statutory time limitation.

Id. at 595. The Tenth Circuit concluded that the charge was
adequate to satisfy the notice requirement. Id.

                              ***

    Defendants interpret Mistretta to require an express
statement in the charge that the plaintiff is bringing
claims on behalf of himself or herself and "others
similarly situated." Defendants' argument is not
persuasive. Although the charge at issue in Mistretta in
form included 'individually and on behalf of all others
similarly situated,' the Tenth Circuit did not focus on the
form of the notice. Rather, as described above, the court
believed the allegation that Sandia's "arbitrary action
constitutes age discrimination against workers over 40"
gave sufficient notice to the state agency so that it had
an opportunity to investigate the charge, particularly in
light of the ADEA's broad remedial scheme. In short, this
court believes Mistretta simply requires allegations of
class-wide discrimination in order to satisfy the notice
requirements of § 626(d).

    Having concluded a filed charge need not contain an
express statement that the charge is filed on behalf of
others similarly situated, the court must now determine
whether Mr. Thiessen's charge gives adequate notice of
potential class claims. In his charge of discrimination,
Mr. Thiessen sets forth the following allegations:

    Employment decisions at GE Capital for persons
    similarly situated to me show a "stark pattern"
    unexplainable on grounds other than age ···· GE
    Capital has a well-established history of
    "early-outing" or attempting to "early-out" older
    white executives at or near my level. Further,
    the company has an express but covert policy of
    discriminating against older white employees.
    Older white employees who are performing at a
    level which meets or exceeds objective
    expectations are identified as "White blockers"
    or "blockers." They are called "Blockers" because

                              -9-

> their continued employment "blocks" the promotion
> of younger ... "high potential" employees. The
> company's policy is to force the older white
> employees into early retirement or to eliminate
> the employee's position through restructuring.
>
> In his charge, Mr. Thiessen also alleges that "GE Capital
> has a pattern and practice of removing employees identified
> as 'Blockers' from their positions."
> There can be little doubt that such allegations
> contemplate class-wide discrimination on the basis of age
> and were sufficient to notify the EEOC and defendants of
> potential class claims. Under these facts, bearing in mind
> the "broad remedial purposes" of the ADEA, the court
> believes the Tenth Circuit would find that Mr. Thiessen's
> charge satisfies the notice requirements of § 626(d).

Thiessen v. General Elec. Capital Corp., 996 F. Supp. 1071, 1074 -76

(D. Kan. 1998)("Thiessen I")(internal citations omitted)(rev'd on

other grounds, 267 F.3d 1095 (10th Cir. 2001)).

While Foster discussed the possibility that the Thiessen II

opinion referenced two different tests, upon closer examination, the

court interprets Thiessen II as focusing only on the narrower test

described by Chief Judge Lungstrum.  Foster points to the following

statement in Thiessen II: "This so-called 'single-filing rule'

generally allows a plaintiff, who did not file an EEOC charge, to

piggyback on the EEOC complaint filed by another person who is

similarly situated."  Foster, 365 F.3d at 1198.  This statement is

then characterized by Foster as the "broadest test."  365 F.3d at

1198.  The "broadest test" language in Thiessen II was quoted from a

Fifth Circuit opinion, Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1223

(5th Cir. 1995).  But the Fifth Circuit stated that the single filing

rule in its circuit has two requirements.  "First, the person

attempting to piggyback must be similarly situated to the person who

actually filed the EEOC charge.  Second, the charge must provide

-10-

notice of the collective or class-wide nature of the charge." <u>Mooney</u>, 54 F.3d at 1223. After citing a partial quote from the Fifth Circuit, the <u>Thiessen II</u> opinion referenced an Eleventh Circuit opinion and included the following parenthetical: "A plaintiff who has not filed an individual EEOC charge may invoke the single-filing rule where such plaintiff is similarly situated to the person who actually filed an EEOC charge, and where the EEOC charge actually filed gave the employer notice of the collective or class-wide nature of the charge," i.e. the "narrower test." 267 F.3d at 1110. These cases describe the "narrower test."

Thus, the court believes that the <u>Thiessen II</u> court impliedly approved the "narrower test" for the single filing rule. Moreover, nearly all of the circuits have adopted the "narrower test" for the single filing rule. <u>White v. BFI Waste Servs., LLC</u>, 375 F.3d 288, 293 (4th Cir. 2004)(requiring that "all plaintiffs' claims are substantially similar and that the EEOC charge itself gave notice of the charge's collective nature"); <u>Commc'ns Workers of Am. v. New Jersey Dept. of Pers.</u>, 282 F.3d 213, 217 (3d Cir. 2002)(requiring that the "EEOC charge filed by the plaintiff who subsequently filed a class action [allege] class based discrimination"); <u>Gitlitz v. Compagnie Nationale Air France</u>, 129 F.3d 554, 558 (11th Cir. 1997)(same); <u>Mooney v. Aramco Servs. Co.</u>, 54 F.3d 1207, 1223 (5th Cir. 1995)(same); <u>Howlett v. Holiday Inns, Inc.</u>, 49 F.3d 189, 195 (6th Cir. 1995)("there must be some indication that the grievance affects a group of individuals defined broadly enough to include those who seek to piggyback on the claim"); <u>Anderson v. Montgomery Ward & Co.</u>, 852 F.2d 1008, 1016 (7th Cir. 1988)("the charge must, at the very least,

-11-

contain an allegation of class-wide discrimination"); <u>Kloos v. Carter-Day Co.</u>, 799 F.2d 397, 401 (8th Cir. 1986)(same); <u>Naton v. Bank of Calif.</u>, 649 F.2d 691, 697 (9th Cir. 1981)(same); <u>Greene v. City of Boston</u>, 204 F. Supp.2d 239, 242 (D. Mass. 2002)(holding that the First Circuit acknowledged in <u>Basch v. Ground Round, Inc.</u>, 139 F.3d 6 (1st Cir. 1998), that it would allow piggy-backing if the EEOC charge "gives the EEOC and the employer adequate notice of allegations of class-wide discrimination.").

Plaintiffs' authority has since been superceded by the authority the court noted, <u>supra</u>, with the exception of the Second Circuit.[5] The Second Circuit is the only circuit that utilizes the broad test and does not do so universally, but rather applies it in certain circumstances. In <u>Tolliver v. Xerox Corp.</u>, 918 F.2d 1052 (2d Cir. 1990), the court explained the broader test as being applicable within a discrete work group when a discriminatory practice is likely to affect all similarly situated employees in the same way. But, when the grievances are alleged to arise throughout a large group "there must be some indication that the grievance affects a group of individuals defined broadly enough to include those who seek to

---

[5] Plaintiffs cite the following cases: <u>Rosen v. Public Service Electric & Gas Co.</u>, 409 F.2d 775, 780 (3rd Cir. 1969); <u>Robinson v. Lorillard Corp.</u>, 444 F.2d 791, 802 (4th Cir. 1971); <u>United States v. Georgia Power Co.</u>, 474 F.2d 906, 919-921 (5th Cir. 1973); <u>Bowe v. Colgate-Palmolive Co.</u>, 416 F.2d 711, 719-721 (7th Cir. 1969); <u>United States v. N.L. Industries, Inc.</u>, 479 F.2d 354, 378-379 (8th Cir. 1973); <u>Snell v. Suffolk County</u>, 782 F.2d 1094, 1100 (2nd Cir. 1986) (quoting <u>Ezell v. Mobile Housing Board</u>, 709 F.2d 1376, 1381 (11th Cir. 1983)); <u>De Medina v. Reinhardt</u>, 686 F.2d 997, 1012-13 (D.C. Cir. 1982); <u>Crawford v. United States Steel Corp.</u>, 660 F.2d 663, 665-66 (5th Cir. 1981); <u>Allen v. Amalgamated Transit Union Local 788</u>, 554 F.2d 876, 882-83 (8th Cir.), cert. denied, 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 176 (1977). <u>See</u> Doc. 85 at 4-5.

piggyback on the claim." Id. at 1058.

Semsroth's charge fails to meet the requirements of the narrower test since it does not give the city and the EEOC notice of the collective or class-wide nature of the charges.[6]   As stated previously, the only statement that included any indication that more than one person was affected by defendant's conduct was the paragraph in Semsroth's charge that referenced a women's luncheon and other females with "problems."   The mere fact that women were meeting at lunch to discuss problems at work does not equate to proper notice of potential class action claims.   Plaintiffs fail to cite, nor can the court find, any authority that would conclude this statement was sufficient to give the EEOC and defendant notice of a class action. A review of cases that resulted in a finding of proper notice clearly demonstrates that Semsroth's charge has failed to provide requisite notice. See Foster, 365 F.3d at 1199("This charge is made on behalf of all others similarly situated."); Mistretta, 639 F.2d at 593 (the charges filed by Mistretta and McCrory were timely filed and in form included "individually and on behalf of all others similarly situated."); Anderson, 852 F.2d at 1010 ("To my knowledge, approximately 25 other employees have been affected and all are over 40.... As far as I know, most of the older employees let go in Chicago have been replaced by younger employees").   Although the court

---

[6] Plaintiffs do not assert, nor cite any authority, that the three charges filed collectively would give some sort of notice of a potential class action.   The court is under no obligation to perform research nor make arguments on plaintiffs' behalf.   See Phillips v. Hillcrest Med. Ctr., 244 F.3d 790, 800 (10th Cir. 2001).   Moreover, the court lacks significant facts to determine whether the charges were filed collectively.

recognizes that formal or legalistic language is not required, Semsroth's statement was not sufficient.

Even if the Tenth Circuit endorsed (or at least required a district court to consider) the broader test, the court finds that plaintiffs have not satisfied it. The Circuit described the broadest test as allowing a plaintiff to piggyback when "their claims arose out of the <u>same</u> <u>circumstances</u> and occurred within the same general time frame." <u>Foster</u>, 365 F.3d at 1199(emphasis supplied). In <u>Foster</u> all of the plaintiffs were laid off by their employer within the same time frame. The <u>Foster</u> court remarked that the situation was identical to the example in <u>Horton v. Jackson County Bd. of County Com'rs.</u>, 343 F.3d 897, 900-01 (7th Cir. 2003). The <u>Horton</u> court opined that the single filing rule should be limited to cases in which the unexhausted claims arise from the same conduct, i.e. a situation in which all employees over the age of 40 are discharged. The <u>Horton</u> court went on to explain:

> Horton was fired (or so she alleges, for of course we express no view of the merits of either her or Brooks's claim) because she had brought an earlier suit against another Jackson County agency. Brooks was fired because she supported Horton, by hiring her for the Juvenile Center and then by sticking up for her there until they were both fired. Retaliating against Horton for her earlier suit, and retaliating against Brooks for Brooks's support of Horton, were different unlawful acts. Although the two employees were fired from the Center the same day, they were fired for different reasons, based on different conduct--Horton's suit, and Brooks's support of that suit. The failure of conciliation with Horton cannot be assumed to have doomed an attempt at conciliation with Brooks, excusing her from filing a timely administrative charge. Unless the single-filing doctrine is limited to cases in which the claims arise from the same facts rather than merely from facts that resemble each other or are causally linked to each other, courts will perforce be excusing the filing of a timely charge in every case in which an employee alleges retaliation for supporting another employee's charge. Such

-14-

> a rule would undermine the EEOC's conciliation procedure
> for no good reason.

Id.

It is readily apparent that while plaintiffs' complaints share a degree of commonality, it is clear that the conduct complained of is not the "same," even among the named plaintiffs. Plaintiffs cursory argument simply states that "plaintiffs' EEOC charges are sufficient" to meet the single filing rule since the claims "arise out of similar discriminatory treatment in the same time frame." (Doc. 85 at 4-5). Plaintiffs' simplification of the single filing rule and their utter failure to demonstrate how the charges are similar in the context of the broader test cannot meet their burden.

While the "broadest test" may be characterized as the most lenient, it is reserved for those situations in which one plaintiff's notice to the EEOC and the company would have essentially put them on notice. Accordingly, the courts have characterized this test to require the same factual circumstances and not simply a blanket allegation of sex discrimination. Plaintiffs assert that "it is unfathomable to believe that if the EEOC had investigated the plaintiffs' complaints [EEOC charges], it would not have investigated all the issues contained in the plaintiffs' complaint." (Doc. 85 at 7.) Plaintiffs' EEOC charges contain three pages of specific factual situations involving different employees of the city while the complaint contains 27 pages of allegations. While this court is required to accept plaintiffs' allegations as true for purposes of this motion, it is not required to accept speculation. What the EEOC would have done or would have found is just that: pure speculation.

-15-

As Judge Posner opined in <u>Horton</u>, allowing plaintiffs' class action to proceed on the basis that the claims are all similar merely because plaintiffs are alleging sex discrimination would "undermine the EEOC's conciliation procedure for no good reason" and, in essence, provide an escape for those plaintiffs who failed to file a timely EEOC charge. 343 F.3d at 901.

Plaintiffs' motion for class certification is DENIED.[7] Plaintiff Plush shall show cause no later than October 7, 2005, why her Title VII claims should not be dismissed for lack of jurisdiction.

A motion for reconsideration of this order is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. <u>Comeau v. Rupp</u>, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in <u>Comeau</u>

---

[7] Defendant's motion to strike (Doc. 77) is denied as moot. Plaintiffs' claim for class certification under 42 U.S.C. 1981 does not require exhaustion. The court is concerned that plaintiffs' cause of action does not state a valid claim since section 1981 does not address selectivity based on sex. <u>Manzanares v. Safeway Stores, Inc.</u>, 593 F.2d 968, 971 (10th Cir. 1979)(Section 1981 does not apply to sex or religious discrimination.) <u>Moreover</u>, Semsroth, Warehime and Voyles are white. Plush's race is unknown. On or before October 7, 2005, all plaintiffs shall show cause why their section 1981 claims should not be dismissed.

-16-

<u>v. Rupp</u>.   The response to any motion for reconsideration shall not exceed three pages.   No reply shall be filed.

IT IS SO ORDERED.

Dated this 29th  day of September 2005, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE